20-4056 United States v. Maumau. You have Judge Temkevich in Denver, Judge Briscoe in Lawrence, Kansas, Judge Bacharach in Oklahoma City, Oklahoma. And with that, Mr. Gleason, I think you're first up, so you may proceed. Thank you, Your Honor. Although we are aptly... Appellant's counsel go first. Thank you, Judge. I'm Ryan Tenney. I'm here on behalf of the United States. After a defendant is sentenced, a district court does not have the inherent authority to reduce or modify the sentence. Instead, a court can only do so in specified instances where Congress is expressly granted a jurisdiction to do so. Now, the question before you is whether the compassionate release statute expressly authorized the particular reduction in And as we've explained in our briefs, the answer is no. I'd be happy to address any questions raised by the briefing, but subject to questions, I plan to address the following two points. First, under this statutory scheme, the Sentencing Commission's policy statement defines the meaning of extraordinary and compelling reasons. And second, the First Step Act did not transfer the Note 1D authority from the director... that's presently effective. Your Honor, we believe that we do have a policy statement that is presently effective. Do we have a policy statement that was promulgated after this act? No, we don't. But our view is that the rest of the policy statement is still controlling. The parts that have not been repealed by Congress's action are still controlling. Where to pick through the policy statements and throw out what we think would not now fit within the First Step Act? You would do so under an implied repeal analysis, yes. And let me give you a couple of reasons why, Judge Briscoe, why we think that's correct. First of all, in the proceedings below, Mr. Mamo conceded that that was the case. If you look to the appendix at page 172, we had actually raised this as something of a sort of slippery slope argument. We said if you followed their position, then it might result in the policy statement being thrown out. And at page 172, they chided us for making that suggestion. They, in fact, said that now the only thing that would be thrown out would be the portions directly affected by the First Step Act. So I don't think they can make that argument. But second, the statute itself, 3582, even after the First Step Act, still requires consistency with, quote, the applicable policy statements. And if you look to the title of 1B1.13, Your Honor, the title of 1.13 even now says, quote, reduction in terms of imprisonment under 18 U.S.C. 3582c1a parentheses policy statement. There is no other policy statement in the guidelines that addresses compassionate release motions. There's no attempt by the Commission to differentiate one policy statement for a defendant filed motion versus another policy statement for a motion filed not by the defendant. And so the only policy statement that exists for compassionate release motions is 1B1.13. And Congress's still and continuing directive is for courts to apply that policy statement. And so let me say there's a continuing directive by Congress. Yes. That policy statement. Where do we find that? Well, I may have misspoken by a half degree, Judge Briscoe. Congress did not change the language in 3582 that requires consistency with, quote, applicable policy statements. So our view is that as a matter of plain language interpretation, you'd look to the word applicable and then you'd look to policy statements. And the question is, is there an applicable policy statement? And the answer is yes. Other than three discrete phrases within 1B1.13, even after the First Step Act, you can apply the rest of it in its entirety. You think it's expected the Sensing Commission to promulgate a new policy statement to deal with the other reasons provision? No, we don't think so. Not with respect to the other provisions. I mean, Mr. Mamow has made the point, he's made reference in his brief to the fact that in 2019, the Commission's statement on updates in Section 10.7 says that it does need to amend the policy statement. We agree that it needs to amend the policy statement insofar as the policy statement currently refers to defendant filed motions. And that fits under a traditional implied repeal analysis. I mean, we discussed this at some length in our reply brief. You don't get to do an implied repeal, or even in this case, an implied amendment of a statute based on supposition. You don't get to do it based on inference. Out of respect for the legislative process, you only do an implied repeal when this is the language, a clear and manifest congressional intention. So we agree, and this will go to your question earlier, Judge Briscoe, as well. We wholly agree that under an implied repeal analysis, those few phrases within 1B1.13 that talk about a defendant filed motion have been impliedly repealed because there is now an irreconcilable conflict with the first step back than those. But that doesn't get to the place that the district court got to. Well, before we go there, do we now look at what the Bureau of Prisons says in their policies, or are those off the table entirely? Because now we have a defendant who asked for release with the warden, asked for relief with the director, got nothing, and now he's filing with the court, which we all agree, I think, is correct. He can do that. But does the policy statement of Bureau of Prisons come into play here at all? No, it would only come into play if a motion is filed under Note 1D, and if you now hold that a court has authority under Note 1D. But our view is that a defendant on a defense filed motion can only get into court on a motion filed under 1A through C. Let me explain why, because this really, I think, is the heart of this case at this point, Judge. The district court below assumes that with the first step back, the Note 1D authority transferred. To get to an implied repeal, though, you'd have to have a clear and manifest congressional intention. It is entirely consistent to say that a defendant can file a motion and get into court on the first three grounds identified by the commission, medical, family circumstances, and age, and still say that the defendant has no right to get into court on a Note 1D because that's BOP's decision. There's nothing wrong with that as a system. The only thing that the district court and Mr. Malma have pointed to are two things. One, the ability of a defendant to directly file, and then two, this title of that provision of the First Step Act, which is increasing the use of compassionate release. But if you look to the data that we put forward in the 28J letter, simply giving defendants the ability to directly file has already increased the use of compassionate release. But you're writing out then the subpart D, the other reasons. No. If you don't have the director involved, is that what you're saying, that there's no subpart D? No, with respect to that, I think that's exactly not what we're doing. What we're saying is you enforce Note 1D as written. In other words, a defendant has the ability to go into court on 1A through C. If he wants to claim that he has a medical condition, a family circumstance, or an age-related reason, he gets there. But the 1D authority on its text only belongs to the director of BOP. And the director of the BOP in Program State Statement 5050.50 has essentially said the only ways that you can obtain compassionate release are A through C. There is no other catch-all. Yes. Therein lies the catch-22. You say as determined by the BOP, but the BOP through Program Statement 5050.50 has said that there's no such thing as a subsection 1D catch-all release. Your Honor, with respect, we think that helps us. We don't think that hurts us. And here's why it helps us. Because the backdrop for all of this is the 2013 Inspector General Report. And the 2013 Inspector General Report lays out in painstaking detail how the Bureau of Prisons was not exercising that authority to expand the categories. It made it really clear back then that the director was not moving beyond A through C. And yet when Congress tries to, quote, increase the use of compassionate release in 2018, it doesn't do anything about that. The only thing it does is give defendants the direct file option. And so if what Congress was wanting to do, let's just go right to that point. If what Congress was wanting to do was direct somebody to expand the categories beyond A through C, it could have done that directly. Or if what it was wanting to do was give courts the authority that BOP was not exercising, it could have done that directly, too. And so Mr. Mama's argument is really premised on a supposition about what we think Congress maybe wanted. But Congress didn't do this, even though Congress was aware of the exact problem that you've identified, Judge Baccarat. Congress knew that BOP was not moving beyond A through C, and Congress didn't make those changes. Congress didn't say to the commission... Well, you're looking at the policy statement and commentary to the policy statement. Don't you think it's better for us to begin with the statute? And the statute talks about, it seems to me, to give more leeway to the court itself, because it speaks in terms of the court finding. It does. But there's three statutes that cross reference each other. 3582 makes the finding of consistency with the policy statement. But then 994A2, which references 3582C globally, and then 994T, which specifically references the Compassionate Release Statute, both give the commission definitional authority. In effect, what they've done... No, they don't. No, they don't. I think all they say is that... And this is 994T. It says that Congress directed... It says Congress directs the Sentencing Commission to promulgate such policy statements, and I quote, to describe what should be considered extraordinary and compelling reasons. Now, describing could be interpreted differently than finding or defining. And we have other language in the statute that talks about the court defining. Well, no. I'm not aware, unless I've missed it, of any provision that gives courts the authority to define. What we have is 994A2C, which talks about the commission describing, quote, the appropriate use. We have the language that you've just referenced, which talks about the commission describing what should be considered. We have 3582, which requires a finding of consistency with the policy statement. So we have three different statutes where Congress is linking this to the commission's policy statement. And then we have the legislative history. Well, we have the policy statement, though, that says the court determines after it looks and finds satisfactory determination under 3553A, it's then for the court and the word is determined. The court determines that. And that's where I get to thinking maybe there's more authority there with the court than the policy statement gives to the Sentencing Commission. Sure. But then I would direct you. Determine means more than describe. Right. But then within the same policy statement, if you look to the provision under Note 1, the very first line of Note 1 of the commentary, quote, provided the defendant meets those requirements of Subdivision 2, extraordinary and compelling reasons exist under any of the circumstances set forth below. If the commission had wanted to say under any of the circumstances set forth below or other reasons given by the courts, it could have. But it didn't. As written, it seems to assume that it has the definitional authority. Our base point on that is that if you take those three statutes together plus the language of the commentary, what it really reads like is a definitions statute. Congress has delegated to the commission the ability to write the definition statute. And as a definition statute, it sets the parameters. I'd like to reserve the remainder of my time for rebuttal unless there are remaining questions. Thank you, counsel. Mr. Basin? Mr. Gleason, I think you're muted. Thank you, Judge. Always important to have the court hear what you're saying. John Gleason for the athlete. Your Honors, I want to suggest that this is not nearly as complicated as the government suggests because Congress told us exactly what to do when the law changes in the way it did in the First Step Act. And the commission has not yet acted. And it says it's right under our noses in 3553A5, statute that applies to every sentence, every sentence reduction. And it says that the court must consider the pertinent policy statement, quote, subject to any amendments made to such policy statement by act of Congress regardless of whether such amendments have yet to be incorporated by the sentencing commission, close quote. We obviously have no commission amendment. And to Judge Briscoe's point right at the outset, in fact, that's led several district courts. And this holding is quoted approvingly by Judge Campbell in this case has led several district courts to hold flat out. There is no applicable policy statement yet for motions when they're made by defendants. But even if 1B1.13 is the applicable policy statement, the court's required by 3553A5 to consider it subject to the fact that Congress eliminated BOP's veto power over these motions. You can't just ignore some of the references to BOP's gatekeeper role. And we know Congress did it explicitly to increase the use of sentence reductions. You can't just ignore some of the references to BOP's gatekeeper role as the government wants you to and keep others. Otherwise, it's a policy statement for only BOP motions and walks right into Judge Briscoe's point at the outset, which is why is this even an applicable policy statement? If it is, and not only 3553A, but I'm going to suggest to the court that 3553A5, I'm going to suggest to the court that Dorsey brings you to the exact same conclusion. Dorsey, the Supreme Court's opinion says statutes trump guidelines. And then it says the critical underlying inquiry is what's the basic objective of the statute. Look to its language and its structure. And here we have a statute whose language explicitly and structure and objective was to take BOP out of the middle. And we have... How do you respond to Mr. Tenney's argument that increasing the use of 3582C1A is consistent with his interpretation, because now in those examples, without a BOP initiated motion, there are still compassionate releases that are not. Yes, Your Honor, because the commission articulated four criteria. Judge Briscoe quoted the 994T. And that section goes on to say that the commission should describe criteria to be used by courts. And one of those, and these are separate sections within policy statement 1B1.13, medical condition, age, family circumstances, other reasons in addition to or separate from, I'm paraphrasing, those specified reasons. And we know that that accords precisely with the congressional intent, which was included within the congressional intent back in 1984, was to provide relief for unusually long sentences. And, Judge, the answer to the question is, of course, the government's argument, if accepted, doesn't obliterate inmate motions for compassionate release. But one ground for that motion explicitly anticipated by the Congress back in 84 and by the Sentencing Commission is extraordinary and compelling reasons other than or in addition to the specified grounds. And what the government wants you to do is create exactly the catch-22 you described in the face of a congressional enactment intended to increase the use of sentence reductions, which are intended, among other things, to allow for reduction of unusually long sentences. The government wants you to read this, they say they want to read three statutes and one policy statement to eliminate, because you're exactly right, Judge. I think, I just wanted to let you know, I think the chief has a question. All right, Chief. I was looking at this. Why would a change in the sentencing scheme be an extraordinary and compelling reason for action by a district court judge? Is the answer, Kenneth? Why is that extraordinary and compelling? Oh, well, you know, it's extraordinary and compelling, Judge, for precisely the reasons you've seen in this trickle of cases. And if I can address, I want to address that if I can in the context of my response to the government's claim that this narrow window that Congress opened will produce far-reaching and destabilizing consequences, which is what the government alleges. And the reason it matters, the reason the change in 924C matters is because, for one thing, the sentence reduction that Kappa Mau Mau received requires changed circumstances. You can't, we agree with the government, you can't ask for a do-over of an unusually long sentence. It requires changed circumstances. That's set forth in the legislative history that's quoted on page 13 of her brief. And boy, do we ever have a changed circumstance here, Judge. Congress has acted in a way where today's mandatory minimum for Kappa Mau Mau is 40 years less. I get completely, that's not enough. Congress eliminated stacking, though, they didn't make it retroactive, which would help these, you know, this class of defendants out. Completely agree. It's not enough that that changed circumstance happened, but the same Congress, Judge, and it's not enough because they didn't make it retroactive. The same Congress, in the same statute, opened a narrower window that allows inmates to file sentence reduction motions, even when BOP opposes the sentence reduction. And you'll recall from Judge Campbell's opinion, just because Congress didn't want to make every 924C stacking defendant presumptively eligible, it doesn't mean it can't make it a relief available for some. And look how narrow the window is. There has to be extraordinary and compelling reasons. There have to be, has to be subjected to 3553A factors. And you have a bunch of cases before you that show that judges look at offense characteristics and conduct in prison. And the result is this trickle of cases like this one, no physical injuries. Well, do we have, do we have any circuit court decisions on this case that would tell us that it is totally proper to do what Judge Campbell did in this case, that is to determine on her own what is sufficient? Uh, not yet. We're hoping to get one here. Well, maybe after, after we have a ruling that would go your way, the floodgates will open. I mean, this is just the beginning of whatever comes next. If you get my point. I get you, but let me suggest, Judge Briscoe, my argument is completely supported by the data the government has supplied you in the 28J letter. In the year after the First Step Act, there were 2387 drug sentences reduced. That's what retroactivity does. Those are far-reaching consequences. I agree. In the same year, 96 inmate motions for sentence reductions were granted. You round up, Judge, it's six, ten thousandths of 1% of yesterday's BOP prison population. Should the policy statements that were in play, are they still to be applied in any way? Yeah, well, they should supply, as Judge Campbell said, and a number of other judges said, yes, they should provide some guidance, especially with regard to the three specified grounds. But the policy statement to the extent that it vests in judges, both the policy statement and the statute and the commentary on which the government relies, explicitly vest in judges, not the BOP, not the commission, the determination whether reasons are sufficiently extraordinary and compelling to warrant a sentence reduction. So, yes, we don't shy away from the fact that 1B1.13 can provide valuable guidance, especially in those specified areas. But the fact of the matter is, Congress has acted to take BOP out of the way for the purpose of having 3582C1A perform the function it was enacted to perform. But what if, Mr. Gleason, let me ask you this, because it seems to me that the problem, it lies in Program Statement 5050. So let's hypothetically assume that the BOP initiates some program statement that identifies a Subsection D criteria rehabilitated based on religion or other valid purposes. And now that, when you were answering the question about, from Judge Briscoe, about what 994T means, that would presumably be an adequate description of extraordinary and compelling circumstances, right? If the BOP would describe what would be extraordinary and compelling circumstances other than A through C. So my question is, assuming that that's the case, so if we were in that hypothetical world, why would it be to say that Application Note 1D, as determined by the BOP Director, there exists extraordinary and compelling circumstances. Now these would be the criteria for rehabilitation or other valid purposes under that new hypothetically amended program statement. So it seems to me that if in that world, Mr. Tenney's interpretation would square with 994T and would square with notwithstanding the First Step Act. But tell me if I'm wrong about that. Well, Judge, respectfully, I think you are, for two reasons. One is, that prefatory language in 1D is, just to cite one opinion we've cited to you, the Derek Redd case out of Eastern Virginia, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance. And I think writ large, obviously, pre-First Step Act, by definition, those other reasons would have been determined by BOP because they had to make the motion. The second answer to your question is this. There is literally no sense, and I think there's some confusion created in this respect by the government's argument. There is no sense in the commission delegated to BOP a responsibility to come up with criteria based on which sentence reductions could be granted. 994T says, commission, you describe what this is and you provide the criteria. If you look at the background section, the very last thing of 1B1.13, the commission cites 994T, quotes it, says, here we go, we did it. We did it. These are the four grounds, age, medical condition, family circumstances, reasons other than or in combination with them. They did it. They couldn't delegate it, Judge, to the commission if they wanted to. All that prefatory language talks about is whether in that particular case, not determining criteria, whether in that particular case, BOP determined extraordinary or other reasons were available. The only reason it says it is because the BOP would have to have done it in order for the motion to be filed to begin with, which brings me back. It is interesting to speculate as to what the commission might do, but it brings me back to 3553A5. Our job is not to do that. Whatever the commission does, the commission does. Whatever objections get made will get made. We know that when there is an act of Congress that amends a policy statement, we apply the policy statement subject to the fact, subject to what the congressional intent was. That is 3553A5 and Dorsey. Congressional intent was to take an institution that was supposed to be a gatekeeper, but it never opened a gate, out of the way. Counsel, I was curious again about the effect, if any then, of the Bureau of Prisons policy statements. Are they totally off the table? We don't care about them? Well, no, you have to take them with a huge, if I can, I'm over my time. Chief Judge Timkovich, can I answer this question? Go ahead. I had a question too. Okay. Go ahead. Judge, you have to, I don't mean to suggest, I don't mean to be disrespectful to BOP, but judges decide this. Might they find guidance? Yes. There are two completely flat contradictions, and Judge Bachrach mentioned one of them. Flat, irreconcilable inconsistencies between that program statement, 50-50, and what the commission itself says. One relates to whether you can consider circumstances existent at the time of the sentence. And another relates to this fact that the BOP only acknowledges three of the four grounds for relief. So for what it's worth, I don't mean to suggest no one can read it, but both the statute, the policy statement, and even the commentary on which the government relies turns to judges to make the determination. Yes, Chief Judge. Mr. Gleeson, if we agree with that point, and district courts do have authority here, I guess we're going to have to decide on a and are we going to review that for an abuse of discretion by the district court? And what would you advocate as the appropriate definition, if you will, of extraordinary circumstances that the circuit courts need to come up with? Great question. And if the government here actually contended that there were an abuse of discretion, we might be discussing it in the context of this appeal. But without a doubt, what is already textually a narrow window, extraordinary and compelling circumstances against a backdrop requiring changed circumstances will be the contours of that narrow window, obviously, will be further defined by decisions, including those of this court. And I do want to suggest, if I may, Judge Tinkovich, Chief Judge Tinkovich, one reason why this particular category of cases is more likely than any other to meet with your approval. And that is the authorities we cited in footnote 10 of our brief, the sorted racially discriminatory history of the application of these stack sentences. Commission rang an alarm bell in 2014 said for decades. Great. Are you saying it was applied here discriminatorily or not? No, you know, I'm not talking case by case, Judge. Is there any evidence? I'm sorry. I'm sorry. You're cutting out. I'm sorry. Judge, I was a prosecutor. I applied the statute. Did I do so with racially discriminatory 10? No. Data are data. If you look at that 2018 March of 2018 report cited in our brief, you see that that again, the third alarm bell commission says black men are overrepresented in the 924 C population generally, but they're dramatically overrepresented over 70% of the stack. And here's the kicker for this case. The only category of defendants who do worse than black men are other race defendants, including Pacific Islanders like Kepa Mau Mau. These sentences shame all of us, Judge. I don't mean to cast aspersions on a particular prosecutor or office, but the data speaks for itself. All right. Well, I think you've, uh, you're, you've any other questions from the panel before we go back to rebuttal for me. Thank you. Okay. Mr. Kenny, you have a few minutes left. Thank you, Judge. Just a few points in rebuttal. First, there is no legal requirement that there be something like no one D at all. Uh, as we cited in our brief case law from this circuit has definitively elders. Just here's the quote from Blackwell quote. A district court is authorized to modify a defendant sentence only in specified instances where Congress has expressly the court jurisdiction to do so. So there's no requirement that there be such a system and there's no right on the part of a defendant to have conditional or early release. So what you're looking at is a question of statutory interpretation. Has Congress actually given this particular authority in this instance and the result, and this gets to some of your earlier questions, Judge Briscoe, if you looked at note one D and said that in the wake of the first step back to that entire note is gone, you'd still have an entirely consistent and coherent scheme because at that point what the defendants would be able to do is direct file emotion under notes one A through C. And that's what Congress did in the first step back. This is where we're pushing back on the point by Mr Mamo. If Congress wanted to expand the categories, it could have. The only thing it did was give a direct file and that's already resulted in relief for scores, literally scores of defendants. The data, this, this I think is why Mr Gleason with respect is wrong when he from 2018, which is the year before to 2019, there was a quote five fold increase in compassionate release grants just on the medical category alone. The numbers went from 15 to 103. Can I ask you, and I'm sorry to talk over your point, but I had a question. The, um, now you said that it's completely consistent with 3582C1A is consistent with the BOP having, you know, power to define other extraordinary compelling circumstances. Typically when we are trying to ascertain the meaning of a statute, a guideline, a policy statement, we decide which is the better interpretation in the absence of Chevron or some other statutory canon. And so if the language in policy in application note one D is ambiguous and is susceptible of your interpretation or Mr. Gleason's, why shouldn't we look, look eye to eye with the elephant in the room and say, which is more consistent with why as determined by the director of the BOP is remaining in application note one D. Why should we decide, even though it may be harmonious to read it all as, as consistent with the regime under the pre first effect, why shouldn't we decide the better interpretation as Mr. Gleason's? Judge, I'm out of time now. Yeah. The answer to your question, Judge Bachrach is because you'd have to do this as an implied repeal. I think if we were doing this on a direct appeal, the question as you framed it would probably be more consistent with the defendant's position, but you're doing this as an implied repeal. And if you get into the implied repeal case law, the whole subtext is separation of powers. It's respect to the fact that Congress gets to pass statutes and we're not going to impliedly repeal them unless we're really, really sure. I mean, to put it colloquially, we have to be really, really sure that this is what they intended. So what are we sure of after the first step back? We're really sure that it That's why the language in 1B1.13 that says otherwise goes away. But are we really, really sure? Is there a clear and manifest intention, not just for defendants to be able to direct file under 1A through C, but is there a direct, is there a direct and manifest intention that courts be given a new substantive authority to expand the categories? That's not there. That argument with respect to Mr. Gleason is being made by inference and by supposition and by a lot of we think this is what Congress obviously meant. But you don't impliedly repeal, let alone impliedly amend statutes based on inference or supposition. The only thing Congress did with the First Step Act to increase the use of compassionate release was give defendants a direct file. Giving defendants a direct file option alone has resulted in a fivefold increase. So all we're asking you to do is take Congress at its word. If it wanted to do more, it could have. It knew this problem existed. It didn't fix the problem with 1D. And I think the result of that, Judge Bachrach, is on an implied repeal analysis, you simply say, if Congress wanted to fix this, it could have. It didn't, so we're going to apply it as written. And as written, Note 1D doesn't give authority to courts. It just gives authority to the BOP. And the defendants can still get into court on a 1A through 1C motion, which they're doing literally by discourse. Well, what do we do with Congress's direction to the Sentencing Commission to promulgate new policy statements? That's a direction from Congress? Yes, that's true. And they would promulgate new policy statements that would be consistent with what Congress has done. But Congress has never done anything. They did not do anything in the First Step Act to expand the categories. It knew that BOP was limiting itself to those three categories, and it didn't make any direction about that at all. And so the new policy statement, to get right to your question, Judge Briscoe, the amendments to 1B1.13, under what Congress did, would have to reflect the fact that defendants can now file their own motions. That would be the new policy statement. But Congress has never made a direction to either expand the categories or to take away BOP's authority under 1D. It hasn't done those things. I thought the whole purpose of the First Step Act was to expand the application of compassionate release. I thought that was the congressional message. The word that Congress used was expand the use. That's the title. Expand the use. Okay, let's use that. Yeah. Yeah. And that's where the string site that we have on pages 13 to 14 of our reply, and that's really where the 28J letter comes in. I mean, that data was released after we filed our reply. Again, according to that data, it's a five-fold increase. And then the next number I think matters too. 67% of those motions were defendant-filed motions. And if you need an example of where this is playing out, it's actually the year after that. It's the COVID year. Because there have been scores of COVID-related motions filed by defendants, not by BOP. And that's illustrating what we're saying. Congress wanted defendants to be able to get into court, and they are. And that alone has increased the use. So really what you're saying, compassionate release is basically for the dead, the old, and the dying. No, I'm not sure I would put it in those words. Or if they have family members who are in need of their help as a caregiver. Yeah, that's what the commission has said. So defendants like Mau Mau are out of luck. Right. That's what the commission has said. And he's not sick. Right. And Congress, if it wants to pass a more expansive re-sentencing statute, it could. But Congress passes what we think is a very modest statute. It's a very modest statute that says we're going to let the commission come up with some extraordinary reasons. The commission has come up with those reasons, and those are the reasons. And other than that, you're back to finality and the direct appeal slash 2255 process, which Mr. Mau Mau has already concluded. All right. Thank you, counsel. You're over your time. Any, Judge Briscoe or Judge Bachrach, any final question? I want to compliment counsel for the briefing in this case. It was excellent, the argument. I really felt that was extremely helpful to my thinking about the case and appreciate the quality of the advocacy. You are now excused. The case shall be submitted.